# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,     )
     )
        Plaintiff,     )
vs.     )     NO.  CR-11-0213-HE (01)
     )
JERRY DEAN GONZALES,     )
     )
        Defendant.     )

## ORDER

Defendant Jerry Gonzales is charged in a one count indictment with possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  He filed a motion seeking the suppression of evidence seized during a warrantless search of the vehicle in which he was a passenger at the time of the search.  An evidentiary hearing was held on Friday, July 29, 2011, at which two witnesses testified: Oklahoma City police officer Scott Whitlock and the defendant.  The testimony of the witnesses conflicted in various respects. The court generally found the testimony of Officer Whitlock to be credible and finds that the government established by a preponderance of the evidence the following sequence of events.

During the afternoon of May 13, 2011, Officer Whitlock was performing surveillance in the area of S.W. 55th Street and S. Agnew, next to the Country Club apartment complex in Oklahoma City.  He was in an undercover capacity and investigating suspected drug distribution activity in the area.  The area was a high crime area, with a substantial amount of drug, gang, and other criminal activity.  Although the officer's focus was not on 2405

S.W. 55th Street, he observed at that address three people leaving the house.[1]  He observed the defendant as appearing to conceal something in the waistband of his pants as he left the house and approached a car in front of the house.  Defendant and his brother (Raymond) stepped to the trunk area of the car, where they re-arranged the contents of the trunk.  The officer observed a gun being put in the trunk, which gun he identified as an automatic pistol.[2]

Defendant and the other two persons then left in the car, with defendant's brother driving.  The officer followed them and observed the car making a turn into the inside lane of May Avenue without using the turn signal.  Officer Whitlock summoned assistance from a marked police car.[3]

The car turned into a convenience store/gas station on May Avenue.  Defendant went inside to pay for the gas while Raymond Gonzales remained outside to pump it.  The marked police car approached the convenience store and eventually pulled in behind the car in which defendant was riding.  The police car's emergency lights were activated.  Both Officer Whitlock, who had parked nearby, and Officer Steele, from the marked car, approached the

---

[1]*Defendant's brother Raymond Gonzales and Gilbert Wilkins were the other two.  The sequence in which they left the house was disputed, but the court does not view that dispute as affecting any pertinent determination here.*

[2]*The officer testified he did not recall whether defendant put the gun in the trunk or whether he handed it to his brother who then put it in the trunk.  However, the testimony was that the gun came from defendant.*

[3]*Whitlock sought the assistance of a regular police unit prior to the traffic infraction, and it appears clear that his focus on defendant was principally related to his having observed a gun rather than concern with the traffic infraction.  However, the court concludes the traffic violation did occur and further inquiry into the officer's motivation for the stop is unnecessary.  See Wren v. United States, 517 U.S. 806, 812-13 (1996).*

car in which defendant was riding. Officer Whitlock asked the driver, Raymond Gonzales, if he had a driver's license, and Raymond answered that he did not. Whitlock then asked whether they had anything illegal in the car, and Raymond answered no. Whitlock then asked permission to search the car, and Raymond granted permission.[4]

As Raymond and Whitlock were moving toward the rear area of the vehicle, Officer Steele observed the back seat occupant of the car, Gilbert Wilkins, moving around in the back seat in a way that caused the officer concern that Wilkins might be getting a gun or concealing drugs or other contraband. Steele drew his weapon, telling Wilkins to get out of the car. Officer Whitlock similarly drew his weapon, with both officers pointing their weapons toward Wilkins in the back seat. He was removed from the car and all three occupants, including defendant, were then handcuffed and were seated on a nearby curb while the search of the car proceeded.

Officer Whitlock searched the front seat area of the car first and found, in the center console between the front seats, several rounds of 9 MM ammunition. He proceeded to search the trunk area, ultimately finding a 9MM gun in the fender well. In the meantime, and within a few minutes of the stop, the officers had run checks on Raymond's, Wilkins', and defendant's driving and criminal records,[5] which confirmed Raymond had no license and that

---

[4]*Defendant testified that Raymond was asked about his driver's license and told the officer he did not have one, but was uncertain whether the officer and Raymond continued to talk after addressing the license.*

[5]*Officer Whitlock also testified that he ran a weapon registration check on the 9 MM weapon obtained from the trunk of the car.*

defendant was a convicted felon who also had a misdemeanor arrest warrant outstanding. Defendant and his brother were then formally arrested. A tow truck was called for the car, and the police initiated an inventory search of the vehicle prior to impounding it.

## DISCUSSION

"The Fourth Amendment protects individuals against unreasonable governmental searches and seizures." United States v. Pikyavit, 527 F.3d 1126, 1130 (10th Cir. 2008). While a traffic stop is a seizure under the Fourth Amendment, *see* United States v. Taverna, 348 F.3d 873, 877 (10th Cir. 2003) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)), a stop is nevertheless reasonable if "the officer's actions [were] justified at its inception, and . . . it was reasonably related in scope to the circumstances that justified the interference in the first place." United States v. Tibbetts, 396 F.3d 1132, 1136 (10th Cir. 2005). The government bears the burden of proving that its warrantless stop was justified. United States v. Carhee 27 F.3d 1493, 1496 (10th Cir. 1994).

Here, the court concludes the stop of the vehicle was valid at its inception. The officer witnessed two traffic violations which were sufficient to justify the stop. *See* Taverna, 348 F.3d at 877 ("A traffic stop is justified at its inception if it is based on an observed traffic violation.").[6] Further, Officer Whitaker had witnessed the defendant moving a concealed weapon from the house to the car under circumstances arguably constituting a violation of

---

[6]*Under Oklahoma law, a driver commits a traffic violation when he makes a turn without giving an appropriate turn signal, see 47 Okla. Stat. § 11-604(A), and when he fails to make a right turn as close as practicable to the right-hand curb or edge of the roadway, see id. § 11-601(1).*

Oklahoma law.[7]  The stop at the convenience store was therefore valid.

As noted above, soon after being stopped, the driver of the car then consented to a search of it by the officer. *See* <u>United States v. Diaz-Albertini</u>, 772 F.2d 654, 658 (10th Cir. 1985) ("A warrantless search is . . . not unreasonable when the party in control voluntarily consents.").  The court is unpersuaded by defendant's suggestion that the consent was coerced.  Whether Raymond Gonzales voluntarily consented to the search of his vehicle is a question of fact based on the totality of the circumstances. *See* <u>United States v. Rosborough</u>, 366 F.3d 1145, 1149 (10th Cir. 2004).  The court considers whether the "officer's conduct constituted a coercive show of authority, such that a reasonable person would believe he was not free to 'decline the officer's requests or otherwise terminate the encounter.'" <u>Id.</u> (quoting <u>United States v. West</u>, 219 F.3d 1171, 1176 (10th Cir. 2000)). Factors that tend to indicate whether consent was coerced include the number of officers, the display of weapons, physical touching, and the use of an aggressive tone. <u>Id.</u> (citing <u>U.S. v. Turner</u>, 928 F.2d 956, 959 (10th Cir. 1991)).  Although the presence of two officers and a police car's flashing lights undoubtedly raised apprehension in the mind of Raymond Gonzales, the totality of the circumstances at the point at which consent was granted were not so coercive or overbearing that a reasonable person would not have felt free to decline the officer's request.  The officer's testimony was that a normal tone of voice was used in

---

[7]*In light of the finding as to the traffic violation, it is unnecessary to resolve whether, under Oklahoma law relating to concealed weapons, the officer had probable cause to arrest based purely on seeing the weapon.*

approaching the driver and requesting consent. Had the circumstances been otherwise, it seems defendant would have noticed and remembered the conversation, but he indicated he did not. Further, the officers did not draw their weapons until after the driver's consent had been given. Considering the totality of the circumstances, *see* Rosborough, 366 F.3d at 1149, the court concludes the consent was voluntarily given.

The government argues the search was also justified based on the doctrine of inevitable discovery. In light of the court's determination as to consent, it is unnecessary to determine whether alternate grounds to justify the search may exist.

Accordingly, the court concludes the vehicle defendant was a passenger in was properly stopped and the evidence in question was validly seized. The motion to suppress [Doc. #15] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 2nd day of August, 2011.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE